UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARK JOSEPH AHN<br><br>    Defendant | No. 21-cr-10047-RGS |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States respectfully submits this memorandum in connection with the sentencing of the defendant, Mark Joseph Ahn, who has pleaded guilty to two counts of securities fraud, in violation of 18 U.S.C. § 1348.[1] The crimes of conviction pertain to Ahn's trading in the stock of Dimension Therapeutics, Inc. ("DMTX") based on material nonpublic information that he obtained as a consultant at a company that sought to acquire DMTX.

Under the plea agreement between the parties and 18 U.S.C. § 3553(a), the government asks the Court to sentence the defendant to 12 months of incarceration, a fine of $50,000, 24 months of supervised release; a mandatory special assessment of $200; restitution as determined by the Court; and forfeiture of $49,421.07.  A 12-month term of incarceration and a $50,000 fine are necessary and just under 18 U.S.C. § 3553(a) because the defendant has demonstrated that he poses a risk of recidivism and is not easily deterred from violating the securities laws.

---

[1] 18 U.S.C. § 1348 was enacted in 2002 as part of the Sarbanes-Oxley Act "to provide prosecutors with a different—and broader—enforcement mechanism to address securities fraud than what had been previously provided." *United States v. Hussain*, 972 F.3d 1138, 1145-46 (9th Cir. 2020) (quoting *United States v. Blaszczak*, 947 F.3d 19, 36 (2d Cir. 2019)); *see also* S. Rep. No. 107-146, at 6.  According to the legislative history, the statute "supplement[s] the patchwork of existing technical securities law violations with a more general and less technical provision, with elements and intent requirements comparable to current bank fraud and health care fraud statutes." S. Rep. No. 107-146, at 14.

## OVERVIEW OF OFFENSE CONDUCT

By the time Ahn committed securities fraud in 2017, he had been a corporate insider at multiple companies, as an officer, a director, and a consultant.

In April 2017, the Securities and Exchange Commission ("SEC") issued a cease and desist order against Ahn and a company that is not involved in this case, where Ahn had been the chief executive officer ("CEO"). *See* Presentence Investigation Report ("PSR") ¶¶ 7-9. The SEC action involved two violations of securities laws. First, from January 2012 to February 2014, Ahn and his company misled investors with over 100 internet publications promoting the company that purported to be independent but were actually paid promotions created by two firms that Ahn hired. Some of the articles that Ahn commissioned were unlawful prospectuses transmitted while his company was preparing to offer or offering securities. Second, Ahn and his company violated securities laws by granting options and shares to one of the promotional firms in unregistered transactions that it did not disclose in its securities filings. As a result of the cease and desist order, Ahn had to pay penalties and to give up director or officer positions.

In April 2017, Ahn was a consultant at a biotechnology company based in New York. He had previously been vice chairman of its board of directors. By virtue of his consultant position at this biotechnology company, Ahn learned material nonpublic information regarding DMTX's involvement in ongoing merger and acquisition activity. *Id*. ¶¶ 12-14. The biotechnology company employing Ahn entered into merger negotiations with DMTX. Once merger negotiations between his employer and DMTX had matured and Ahn knew that his employer had made a merger offer at a premium to DMTX's then-current stock price, Ahn bought DMTX stock. *Id*. ¶ 20. Ahn was enthusiastic about his company's merger bid, remarking, "Banzai!" *Id*.

Contemporaneously with his trades in DMTX stock, Ahn bought shares of a rival company, RegenxBio ("RGNX"). RGNX licensed technology to DMTX that was essential to DMTX's business, and during merger discussions between Ahn's employer and DMTX, Ahn provided analysis of the RGNX licenses to his employer. *See id*. ¶¶ 17 and 21. Ahn's employer gained access from DMTX to nonpublic, unredacted versions of the RGNX licenses that DMTX held. The CEO of Ahn's employer notified Ahn that the unredacted, nonpublic versions of the licenses were available for review, and within days, Ahn sold his RGNX shares.

## APPLICABLE SENTENCING GUIDELINES

In the plea agreement, the parties agreed that, under U.S.S.G. §§ 2B1.4, which pertains to insider trading, enhanced for abuse of a position of trust and adjusted for acceptance of responsibility, the defendant's total offense level is 13, with a guideline range of 12-18 months. United States Probation adopted the parties' agreement on the applicable guideline independently reached the same conclusion. *See* PSR ¶¶ 28-40, 85.

## SENTENCING RECOMMENDATION

The Court should impose the term of incarceration and the fine recommended by the government because Ahn must be specifically deterred and because securities fraud committed by insiders like Ahn corrodes public trust in the securities market. As discussed below, all of the factors in 18 U.S.C. § 3553(a) weigh in favor of the government's recommended sentence.

<u>Nature and Circumstances of the Offense / History and Characteristics of the Defendant</u>

As reflected in the PSR, the defendant is very well educated, with long experience as an entrepreneur. As the defendant explains in his sentencing memorandum, he has had to overcome difficulty to succeed and work at the highest levels of corporate enterprise.

3

The defendant also has experience violating the securities laws. On April 10, 2017, shortly before Ahn committed the securities fraud at issue in this case, Ahn settled with the SEC for violations of securities laws that he directly oversaw. As a penalty, Ahn was barred for five years from serving as an officer or a director and had to pay disgorgement and civil penalties of roughly $1,344,431 (as compared to a $200,000 civil penalty paid by his company). When imposing its sentence in this case, the Court should consider that when Ahn committed his crimes, he was on heightened notice regarding the securities laws. He committed fraud anyway.

In his sentencing memorandum and objections, the defendant complains that the PSR mischaracterizes (a) his overall involvement in high-level business development activities at his employer in 2017 and (b) the relevance of his purchases of RGNX stock. Both protestations fall flat given the facts.

First, Ahn was involved in business development activities at the highest level at his company and was a regular participant in strategy meetings with the CEO, the chief operating officer, the president, and the director of corporate strategy at the company that employed him, where he had been, until disqualified by the SEC's cease and desist order in April 2017, the vice chairman of the board of directors. During the merger negotiations with DMTX, Ahn focused his considerable professional skills on assessing the licenses DMTX held, the potential for development of the licenses, and their value for his employer.

Second, Ahn's trading in RGNX stock directly related to his involvement in the merger process with DMTX and involved material nonpublic information. The RGNX licenses were a driving factor in the effort by Ahn's employer to acquire DMTX; indeed, they were *the* reason because they were the basis for most of DMTX's business. Ahn bought RGNX stock while in possession of material nonpublic information about DMTX's business. In August 2017, DMTX

provided confidential access to the non-public versions of the RGNX licenses, and Ahn was the license reviewer for his company.[2] After his company obtained access, and the CEO directed Ahn to the unredacted licenses, Ahn sold his RGNX stock. The Court should consider the defendant's trades in RGNX as part of circumstances of the crime under 18 U.S.C. § 3553(a).

### Seriousness of the Offense

The defendant's crime is a form of corruption. The defendant was a long-time insider at his company, trusted by other corporate officers and given access to internal discussions and information by virtue of the trust they placed in him. The guidelines recognize that a crime is more serious when it involves such an abuse of a position of trust. *See* U.S.S.G. § 3B1.3.

The defendant's argument that the Court should consider his crime to be less serious because he did not trade aggressively demonstrates his cavalier attitude toward violations of the securities laws. In effect, the defendant argues that his culpability is limited because he did not try to hit it rich with his trades in DMTX[3] and because he did not think that his employer would succeed in acquiring DMTX. The defendant also appears to suggest that his crime was not serious because the material nonpublic information he possessed was not very good; indeed, the defendant comes close to denying that he committed securities fraud at all.

The seriousness of the crimes in this case results from the "how" of the crime, not from the "how much." Even a small amount of profit from insider trading perpetrated by a core insider like the defendant undercuts public confidence in the integrity of the markets. Here, the

---

[2] Should these facts remain in dispute, the government will submit exhibits showing the centrality of the RGNX licenses to the acquisition.

[3] The defendant notes his use of limit orders to trade. That use avoided trading in volume that could have affected the stock price for DMTX, given its thin trading volume, and thus reduced the defendant's profits.

defendant cannot dispute that he traded in DMTX when he knew that his employer had offered to buy DMTX at a significant premium to DMTX's current stock price. The defendant admits in his sentencing memorandum that he did not expect his employer to win the merger competition—which means that he expected to profit in excess of the stock-price premium his employer offered. Information about the stock premium in his employer's offer to buy DMTX was not public in the summer of 2017 and could not have been surmised from any public statements by DMTX. Ahn had that information because he was a senior insider who was directly involved in the merger process at the highest levels, and it is absurd to suggest that investors would not be influenced by news that a company had received a merger offer at a substantial premium to its existing stock price.

<u>Adequate Deterrence to Criminal Conduct, Just Punishment, and Respect for the Law</u>

The defendant must be deterred from further violations of the securities laws. In committing the crime of securities fraud shortly after the SEC took enforcement action against him, the defendant has demonstrated contempt for the law. Given his record of violating securities laws and regulations, even after civil action against him, there is good reason for the Court to impose a term of incarceration. Similarly situated corporate insiders should be put on notice that insider trading is a criminal act that will be punished in a meaningful way through a loss of liberty, not just payment of a fine and a forfeiture. Just punishment through a sentence of incarceration also promotes respect for the law by dispelling any notion that a corporate executive like the defendant can simply pay his way out of the consequences of his crimes.

<u>Avoiding Unwarranted Disparities in Sentencing</u>

The sentence of incarceration recommended by the government would avoid unwarranted disparities with similarly situated defendants, specifically, senior corporate executives who had

6

been the subjects of SEC enforcement actions and then turned around, with barely a pause, and engaged in criminal insider trading. Incarceration is necessary to deter such persons and to protect public confidence in the securities markets.

## RESTITUTION

The Court should require the defendant to pay restitution consistent with the First Circuit's decision in *In re Akebia Therapeutics, Inc.*, 981 F.3d 32, 38 (1st Cir. 2020). In that case, the court affirmed an award of restitution to an employer for the costs it necessarily incurred in response to the government's criminal investigation of insider trading by one of the company's employees. The First Circuit recognized that "determining an award of restitution is a fact-specific undertaking and will vary case-by-case" and that the district court has the discretion to determine, for each case, which expenses were necessary and foreseeable, and therefore reimbursable." *Id*. at 39. Here, having himself been the subject of an SEC enforcement action as a CEO, the defendant could reasonably foresee that his employer in 2017 would have to employ counsel to produce documents, prepare witnesses, advise witnesses, and discuss the case with investigating federal authorities. Such categories of expense are reasonable, and the willingness of a corporate victim like the defendant's former employer to engage with and to cooperate with a federal criminal investigation has the salutary effect of reducing cost by allowing the government to avoid having to take formal testimony in the grand jury, with the additional costs and burdens it would necessarily entail. Accordingly, the defendant should pay the required restitution that the Court determines is reasonable, after review of the victim corporation's submission to the Court of its claim for expenses.[4]

---

[4] The government understands from counsel for the victim corporation that it will submit redacted line item detail to the Court to support its claim for restitution and that it can provide unredacted line item detail to the Court directly for in camera review.

## CONCLUSION

The Court should impose the sentence recommended by the government because it is consistent with the goals of sentencing and appropriate for this defendant in light of all the circumstances and because a non-incarceratory sentence would effectively sanction the defendant's decision to repeatedly, deliberately, and brazenly violate the nation's securities laws.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:   /s/Kriss Basil
      Kriss Basil
      Assistant United States Attorney
      617/748-3387

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                       /s/Kriss Basil
                                       Kriss Basil
                                       Assistant United States Attorney

Date: June 4, 2021